180

ZEISLOFT ET AL., APPELLEES, *v.* HANCOCK COUNTY BOARD
OF REVISION; R. L. KUSS AND CO., INC., APPELLANT.

[Cite as Zeisloft v. Board (1972), 32 Ohio St. 2d 180.]

(No. 72-180—Decided December 15, 1972.)

*Mr. John C. Sausser, Mr. David A. Hackenberg, Mr.
Carl William Hinton* and *Mr. Richard J. Rinebolt,* for appellees.

*Mr. Russell E. Rakestraw,* for appellant.

*Per Curiam.* This appeal presents the general question of the remedial relief available to an owner of real property, the taxable value of which has been ordered increased by a judgment of a court of common pleas in a proceeding under R. C. 5717.05 (conferring jurisdiction upon that court to hear an appeal from a decision of a county board of revision), to which proceeding and judgment the owner was not a party and of which it had no notice until after entry of the judgment.

Specifically, the question is: Has the owner-taxpayer, as to whom the judgment admittedly is void, any *standing* to become a party to the proceedings after judgment but before the time has expired for filing an appeal "from the judgment . . . on the questions of law as in other cases" (R. C. 5717.05), and to seek relief from judgment by way of a motion for a new trial, or is he relegated to a collateral attack upon the void judgment by (1) prohibition or mandamus; (2) complaint under R. C. 5715.19 against the in-

creased valuation after the county auditor has accomplished it pursuant to the judgment; or (3) injunction pursuant to R. C. 2723.01 against the collection of taxes upon any such increased valuation?

We hold that, in this case, the aggrieved taxpayer may attack the judgment directly. Accordingly, we reverse the judgment of the Court of Appeals.

This cause originated by the filing of several taxpayer complaints of over valuation and discriminatory valuation with the auditor of Hancock County under R. C. 5715.19. Each complaint sought reduction of the assessed valuation of specifically described real property of the complainant and further described certain properties owned by others which were claimed to be undervalued, the effect of which amounted to discriminatory valuation of each complainant's real property.

None of the complaints mentioned the real property of R. L. Kuss and Co., Inc., appellant herein,[1] and they were duly presented to the board of revision, which granted certain reductions in assessed values. Not being wholly satisfied with that action of the board, the complainants then appealed to the Court of Common Pleas of Hancock County pursuant to R. C. 5717.05, in which proceeding the complainants were the appellants and the county auditor and board of revision were the appellees. Instead of hearing the appeal[2] solely upon the record and evidence submitted to the board of revision, the court heard voluminous additional evidence over 12 days of trial, and on July 30, 1971, it entered judgment which, *inter alia*, ordered the county auditor to increase the assessed value of all commercial real estate in the county by six per cent.

[1]Kuss' motion to be made a party in the trial court after judgment was allowed. Upon appeal to the Court of Appeals and thereafter to this court, Kuss styled itself as intervenor-appellant.

[2]Each complaint was separately appealed from the board of revision to the Court of Common Pleas, which considered the appeals for hearing only and granted separate judgments by a single entry. The appeals to the Court of Appeals were docketed as one case. Therefore, we refer to the appeal to the Court of Common Pleas as one appeal and to the multiple judgments as one judgment.

There is no dispute that Kuss owns commercial real property in Hancock County, that the judgment of the Court of Common Pleas affects that property, that Kuss was not a party to the proceeding before the Court of Common Pleas, and that Kuss had no notice whatsoever of that proceeding or the possible effect upon its property of a judgment resulting from that proceeding until after that judgment was entered.

On August 13, 1971, Kuss filed a motion in the Court of Common Pleas to be made a party to the proceeding, which motion was granted, and a motion for new trial, which was not overruled until October 7, 1971. Meanwhile, on August 27, 1971, Kuss filed a notice of appeal to the Court of Appeals from the judgment of July 30, 1971.

Following a written memorandum opinion, the Court of Appeals dismissed the appeal on motion of the appellees for improper intervention in the Court of Common Pleas by Kuss, because it had not intervened in the proceeding at the board of revision stage or within 30 days following that board's decision. The opinion cited *Rueben McMillan Free Library Assn.* v. *Mahoning County Budget Comm.* (1963), 175 Ohio St. 191.

It is clear, however, that Kuss made a timely attempt to attack the judgment after learning of its adverse effect upon the Kuss real property. Until then, there was no indication that Kuss could have reasonably known that the ultimate judgment would affect its property, even if Kuss had had actual notice of the evidence adduced before the Court of Common Pleas. It would seem that where, as here, the complaint is against a discriminatory valuation, in the absence of "complaint as to . . . another's real property" (R. C. 5715.19), and notice to such other property owner, the board of revision and the court have power only to "determine a valuation which shall correct such discrimination" (R. C. 5717.05), *i. e.*, to reduce the assessed value of the property as to which complaint is brought, not to raise, without notice, the valuation of other unspecified property or classes of property, the undervaluation of which

may have produced the discrimination. See, also, R. C. 5715.10, 5715.11 and 5715.12.

It is also clear that Kuss did not choose to delay and to multiply litigation by collaterally attacking the judgment. Any such attack would either lead it back to the same Court of Common Pleas that rendered the judgment against it or require an original action in the Court of Appeals which has appellate jurisdiction of the judgment of the Court of Common Pleas. Kuss should be given credit for its diligence.

The only question, then, is whether R. C. 5717.05 may be reasonably construed to permit intervention and relief after a judgment pursuant to that statute has been rendered. We think it may. The statute contemplates more than an appeal. The court "may hear and consider evidence in addition" to the record and evidence submitted to the board of revision. The statute contemplates a trial of the issues of valuation leading to a *judgment* by a court, which judgment shall be certified only to the county auditor. It also contemplates an appeal from that judgment "on the questions of law as in other cases."

R. C. 5715.05 is markedly distinguishable from an appeal from a board of revision to the Board of Tax Appeals under R. C. 5717.01. Such appeal may be *heard* by the Board of Tax Appeals or it "may cause its examiners to conduct such hearing and to report to it their findings for affirmation or rejection." Additionally, the board "may make such investigation concerning the appeal as it deems proper." A *decision* is the ultimate product of the hearing which, under R. C. 5717.03, shall be certified to, among others, "the person in whose name the property is listed . . . if such person is not a party to the appeal," who in turn, by specific statutory language in the second paragraph of R. C. 5717.04, may appeal the decision of the Board of Tax Appeals to an appropriate Court of Appeals or directly to the Supreme Court, even though such person was not a party before the Board of Tax Appeals. Moreover, the decision of the Board of Tax Appeals may be reversed,

184

vacated or modified, not on questions of law as in other cases, but only if the appellate "court decides that such decision of the board is unreasonable or unlawful." R. C. 5717.04.

In other words, if the complainants in this case had appealed the order of the board of revision to the Board of Tax Appeals instead of to the Court of Common Pleas, and Kuss had not been made a party before the Board of Tax Appeals, Kuss would have had specific statutory authority to appeal the decision of the Board of Tax Appeals adversely affecting its property to an appropriate appellate court. We conclude that such authority to appeal and standing to become a party before the trial court after a judgment adversely affecting its property are contemplated by the language of R. C. 5717.05 and that the omission in that statute of the language expressly contained in R. C. 5717.04 was not mere legislative oversight. Any such express language would be superfluous in R. C. 5717.05.

We find nothing contrary to this conclusion in *Rueben McMillan Free Library Assn.*, supra (175 Ohio St. 191), or in any other of our prior decisions involving an appeal from a decision of a county budget commission as contrasted to a county board of revision. Moreover, *Rueben* involved the failure to name a necessary party as an appellee. The instant case, as we have shown, involves a corporation seeking relief after judgment in a proceeding to which it was not a party and of which it had no notice.

We conclude further that Kuss' motion for new trial, although within the scope of Civ. R. 59 and filed within the time provided therein, should have been treated as a motion for relief from judgment pursuant to Civ. R. 60(B), and that the notice of appeal to the Court of Appeals was not premature even though filed before the entry overruling the motion. See App. R. 4(A).

*Judgment reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, STERN, LEACH and BROWN, JJ., concur.

CORRIGAN, J., dissents.